UNITED STATES of America, Appellee,

v.

**Willard O. WALKER, Appellant.**

**No. 75–1796.**

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 14, 1975.

Decided May 4, 1976.

I. J. Crickenberger, Arlington, Va. [court-appointed counsel] (Crickenberger & Moore, Arlington, Va., on brief), for appellant.

Edward Lowenberg, Special Asst. U. S. Atty. (William B. Cummings, U. S. Atty., Norfolk, Va., on brief), for appellee.

Before BOREMAN, Senior Circuit Judge, and RUSSELL and FIELD, Circuit Judges.

BOREMAN, Senior Circuit Judge:

Willard O. Walker was indicted for escaping from a federal reformatory, a violation of 18 U.S.C. § 751, and for kidnapping two persons in furtherance of the escape, a violation of 18 U.S.C. § 1201. Walker's attorney made a motion prior to trial for the appointment of a psychiatrist to determine both Walker's mental capacity to commit the offense with which he was charged[1] and his mental capacity to stand trial. The court granted the motion and ordered that

---

1. The motion alleged that prior to the escape and kidnapping Walker received serious head injuries in an assault at Lorton Reformatory. Walker claimed that as a result of these injuries he suffered headaches, had recurring periods during which he could not "think straight," and had received permanent brain damage. The motion requested that Walker be examined to determine whether the offense charged in the indictment could have been the product of mental disease or defect.

Walker be examined by Dr. Reinhardt, who was selected by defense counsel from a list of psychiatrists routinely used by the court. Dr. Reinhardt examined Walker for less than thirty minutes and determined that Walker was capable of assisting in his own defense and competent to stand trial; the psychiatrist reported this to the court but failed to state any conclusion as to Walker's mental capacity to commit the offense.[2] The examination took place one week before trial and Walker's attorney received a copy of the psychiatrist's report a relatively short time before trial. Also, shortly before trial defense counsel learned of a report on Walker's mental condition made nearly four years previously at a hospital where Walker had been committed for mental examination.

On the morning of trial the defense counsel made a motion for a continuance of two weeks to provide an opportunity for further investigation concerning Walker's mental capacity.[3] The continuance was refused and the case proceeded immediately to trial where no defense of insanity was raised because counsel did not have sufficient information upon which to base such a defense. The jury found Walker guilty[4] and,

before sentencing, his counsel made a further motion for additional psychiatric examination concerning Walker's mental capacity. This motion also was denied.

 The motions to the district court, as well as the arguments on appeal, suggest that the primary question is Walker's competence to stand trial. The record is adequate to support the finding that Walker was competent to stand trial; not only does the psychiatrist's report support this conclusion, but also the trial judge extensively examined Walker's counsel regarding the possibility of Walker's incapacity to stand trial. However, we are of the opinion that the primary question is whether Walker was afforded sufficient opportunity to develop a defense of lack of criminal responsibility for his conduct. Our review of the record leads us to conclude that Walker's right to a fair trial was violated because his counsel was deprived of an adequate opportunity to determine the existence of a substantial insanity defense.

 Although Walker's motion for mental examination was made under 18 U.S.C. § 4244, which is directed to examinations to determine a defendant's competence to stand trial,[5] both the motion and the district

2. Dr. Reinhardt's report states in its entirety:
 Willard Walker was seen on April 15, 1975. He was referred by his attorney to assist in his defense.
 In todays interview it is obvious that this man is extremely angry, bitter, and a potentially dangerous man whose hate and resentment can get him carried away, however, there is no evidence that his reasoning is in any way impaired or that he does not understand the nature of the charges brought against him.
 Therefore I come to the conclusion that Mr. Walker is capable of assisting in his defense and competent to stand trial.

3. During a bench conference on the day of trial defense counsel stated that he was informed on the preceding day that Walker had an extensive history of psychiatric treatment. He also repeated Walker's claim that he was struck on the head at Lorton Reformatory and suffered injuries which resulted in periods of dizziness and lapses in memory. Walker's attorney requested a two-week continuance to collect further information. The district judge questioned defense counsel as to his client's willingness to communicate and cooperate in his defense.

Thereafter the judge denied the motion for a continuance and found Walker competent to stand trial.

4. The jury found Walker guilty of kidnapping. Walker had previously pleaded guilty to the escape charge.

5. 18 U.S.C. § 4244 states:
 Whenever after arrest and prior to the imposition of sentence or prior to the expiration of any period of probation the United States Attorney has reasonable cause to believe that a person charged with an offense against the United States may be presently insane or otherwise so mentally incompetent as to be unable to understand the proceedings against him or properly to assist in his own defense, he shall file a motion for a judicial determination of such mental competency of the accused, setting forth the ground for such belief with the trial court in which proceedings are pending. Upon such a motion or upon a similar motion in behalf of the accused or upon its own motion, the court shall cause the accused, whether or not previously admitted to bail, to be examined as to his men-

court's order included a direction to the psychiatrist to determine Walker's mental capacity to commit the offense alleged.[6] Dr. Reinhardt's short interview and written report clearly provided a sufficient basis for the court's determination of Walker's capacity to stand trial, but the report did not reflect the psychiatrist's evaluation of Walker's mental capacity to commit the offense alleged in the indictment.

■ In determining the sufficiency of a psychiatrist's findings, this court has recognized that "[a] claim that the defendant was not criminally responsible [unlike competence to stand trial] is unconcerned with the defendant's understanding of his situation at the time of trial, but is directed entirely to his capacity to understand and control his conduct *at the time of the commission of the offense.*" (Emphasis supplied) *United States v. Taylor,* 437 F.2d 371, 375 (4 Cir. 1971). The fact that Walker exhibited a sufficient present ability to understand the nature of the charges brought against him does not answer the entirely different question of whether he had the capacity to understand and control his conduct at the time of the commission of the offense. The one question may have little bearing upon the other; many defendants who may not be held criminally responsible for their unlawful acts are clearly competent to stand trial. This court further recognized in *Taylor* that "unlike a determination of competence to stand trial, which

focuses on a limited aspect of a defendant's present mental condition, an inquiry into possible lack of criminal responsibility at the time of commission of the offense involves a complex evaluation of his total personality at a previous point in time. It requires that the expert have a *substantial opportunity* to observe the defendant and his mental processes." 437 F.2d at 378 (emphasis added). We conclude that the truncated psychiatric examination of Walker has not met the requirements of the district court's order that the psychiatrist determine Walker's mental capacity to commit the crime.

The Government contends that the district court did not abuse its discretion by denying the motion for a continuance since there was no indication by the defense during trial that Walker may have been insane at the time of the offense. We find this argument unpersuasive as we cannot speculate on what possible avenues of defense an adequate examination might have revealed to counsel. It is altogether possible that if a proper psychiatric report had been furnished to counsel in the course of his preparation for trial he might have been able to develop a meritorious defense.

■ Furthermore, the counsel's failure to make a subsequent motion for additional psychiatric assistance does not excuse the court-appointed psychiatrist's failure to provide the examination and report as directed by the court. The procedures followed

---

tal condition by at least one qualified psychiatrist, who shall report to the court. . . .

**6.** Not only did the motion allege facts indicating the possibility of Walker's mental disability at the time of the alleged offense, *see* note 1 *supra,* but also the court's order contained a direction that Walker be examined by a psychiatrist to determine his mental capacity to commit the offense charged in the indictment. The assistance requested is not available under § 4244 alone, but is authorized upon a showing of necessity under a broader statute, 18 U.S.C. § 3006A(e), which provides in pertinent part:

Counsel for a person who is financially unable to obtain investigative, expert, or other services necessary for an adequate defense may request them in an ex parte application. Upon finding, after appropriate inquiry in an ex parte proceeding, that the services are

necessary and that the person is financially unable to obtain them, the court, or the United States magistrate if the services are required in connection with a matter over which he has jurisdiction, shall authorize counsel to obtain the services.

The examination ordered by the district judge was beyond the scope of the authorization of § 4244 and was equivalent to that authorized by § 3006A(e). This court has previously recognized that "a motion made under § 4244 that properly should have been made pursuant to § 3006A(e) will be treated as having been so made." *United States v. Davis,* 481 F.2d 425, 428 n. 1 (4 Cir. 1973); *United States v. Taylor,* 437 F.2d 371, 377 n. 8 (4 Cir. 1971); we conclude that the order of the court should be viewed as having been made under the authorization of § 3006A(e).

failed to provide either defense counsel or the court with "an adequate basis for determining whether [the defendant] ultimately should be regarded and treated as incorrigibly criminal or desperately ill." *Taylor, supra*, 437 F.2d at 379.

■ The Government also contends that it was proper to deny the continuance because Walker had no credible history of psychiatric disorders.[7] In support of this, the Government submits that the earlier hospital report indicated that Walker had "no mental disorders." This report, however, was prepared more than two years before the escape and kidnapping occurred. The significant period of time that intervened prevents this report from being of substantial probative value in determining Walker's mental capacity at the time of the commission of the crime.[8]

■ We reach the conclusion that the district court erred in refusing to grant a continuance for the purpose of permitting the defense the opportunity for further investigation of Walker's mental capacity to commit the offense with which he was charged. The appropriate remedy should be the same as that provided in *Taylor, supra*. The judgment now on appeal is temporarily suspended and we remand the case to the district court with directions to appoint a psychiatrist to determine whether there exists a substantial question as to Walker's criminal responsibility. If the report of the examining psychiatrist indicates such a question, and if the defense counsel represents that he intends to rely upon it on retrial, the judgment will be vacated and a new trial granted. Otherwise, the judgment will stand affirmed.

*Remanded with directions.*

7. There are indications that Walker had in the past committed several acts of a violent and impulsive nature without motive. He set fires as a youth, exhibited severe behavioral problems while growing up and has spent his entire adult life under a sentence of incarceration. It is alleged that he assaulted a nursing assistant at St. Elizabeth's Hospital while there for psychiatric examination and that he was involved in an altercation with guards at Lorton Reformatory.

8. Furthermore, the head injuries which Walker contends resulted in brain damage occurred after the date of the hospital report. Thus, the report did not eliminate the possibility that Walker suffered some mental disability as a result of the alleged assault.